Alan P. Block
ablock@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone:   (213) 694-1200
Facsimile:    (213) 694-1234

Warren H. Lipschitz*
wlipschitz@mckoolsmith.com
Erik Fountain*
efountain@mckoolsmith.com
Eric Hansen*
ehansen@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1200
Dallas, Texas 75201
Telephone:   (214) 978-4000
Facsimile:    (214) 978-4044

R. Mitch Verboncoeur*
mverboncoeur@mckoolsmith.com
**MCKOOL SMITH, P.C.**
303 Colorado Street, Suite 3100
Austin, Texas 78701
Telephone:   (512) 692-8700
Facsimile:    (512) 692-8744

Samuel F. Baxter*
sbaxter@mckoolsmith.com
Kevin Burgess*
kburgess@mckoolsmith.com
Jennifer Truelove*
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street, Suite 300
Marshall, Texas 75670
Telephone:   (903) 923-9000
Facsimile:    (903) 923-9099

*Pro Hac Vice Applications forthcoming.*

McKool Smith, P.C.
Los Angeles, CA

COMPLAINT

*Attorneys for Plaintiff*
*Velos Media, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION AT LOS ANGELES**

| | |
|---|---|
| VELOS MEDIA, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> THE WALT DISNEY COMPANY, DISNEY MEDIA AND ENTERTAINMENT DISTRIBUTION LLC, DISNEY DTC LLC, DISNEY STREAMING SERVICES LLC, DISNEY ENTERTAINMENT & SPORTS LLC, DISNEY PLATFORM DISTRIBUTION, INC., BAMTECH, LLC, HULU, LLC, AND ESPN, INC., <br><br> Defendants. | **Case No.** 2:26-cv-3052 <br><br> **COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **JURY TRIAL DEMANDED** |

McKool Smith, P.C.
Los Angeles, CA

COMPLAINT

Velos Media, LLC ("Velos" or "Plaintiff") brings this action for patent infringement against The Walt Disney Company; Disney Media and Entertainment Distribution LLC; Disney DTC LLC; Disney Streaming Services LLC; Disney Entertainment & Sports LLC; Disney Platform Distribution, Inc.; BAMTech, LLC; Hulu, LLC; and ESPN, Inc. (collectively, "Defendants" or "Disney"). Velos, on personal knowledge as to its own acts, and upon information and belief as to those of all others based on investigation, alleges as follows:

## NATURE OF THE ACTION

1. Velos owns and licenses a curated portfolio of more than 450 global assets, many of which have claims that are essential to one or more video decoding standards. Velos has been licensing HEVC-related patents since 2017 and has worked to develop an extremely high-quality portfolio. The H.265 Standard is one of the most widely used video decoding standards in the world. Velos' patents also include claims relating to encoding video, though the H.265 Standard does not specify an encoding process.

2. Encoding and decoding video is a critical aspect of Disney's business model, which is predicated entirely on Disney uploading content (*e.g.*, movies, TV shows, sports programs) to Disney servers, where the video can be transcoded, stored, and later streamed by Disney's nearly 200 million subscribers across its Disney+, Hulu, Hulu Live, and ESPN+ streaming platforms. In offering these services, Disney infringes Velos' patents, which significantly contribute to the efficiency, reliability, and quality of Disney's streaming platforms.

3. Velos, both directly and through the Avanci Video patent pool, has spent years negotiating in good faith with Disney with the goal of entering into a licensing agreement. Upon information and belief, Disney has received a RAND offer for a license to Velos' video patents. Despite this, Disney has not accepted this offer and remains unlicensed. Disney's failure to meaningfully engage in negotiations towards a

1

license to Velos's video patents, despite continuing to benefit from this patented technology, has forced Velos to institute this lawsuit.

## THE PARTIES

4.      Plaintiff Velos Media, LLC is a corporation organized under the laws of Delaware, with its principal place of business at 4143 Maple Ave., Suite 130, Dallas, Texas 75129. Velos is the sole owner by assignment of all right, title, and interest in U.S. Patent Nos. (a) 11,627,338, (b) 9,008,184, (c) 12,186,395, (d) 8,964,849, (e) 12,088,843, and (f) 12,341,962 (collectively, the "Asserted Patents").

5.      Defendant The Walt Disney Company is a Delaware corporation with a principal place of business at 500 South Buena Vista Street, Burbank, California, 91521. The Walt Disney Company has designated CSC–Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Sacramento, California 95833 as its agent for service of process. On information and belief, The Walt Disney Company is the ultimate parent company responsible for managing and directing operations, along with its subsidiaries, for all Disney streaming entities.[1]

6.      Defendant Disney Media and Entertainment Distribution LLC ("DMED") is a Delaware limited liability company with a principal place of business at 500 South Buena Vista Street, Burbank, California, 91521. Disney Media and Entertainment Distribution LLC has designated CSC–Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Sacramento, California 95833 as its agent for service of process. On information and belief, Disney Media and Entertainment Distribution LLC is an indirectly wholly owned subsidiary of the Walt Disney Company involved in activities relating to P&L management, distribution, operations, sales, advertising, data, and technology for Disney+, Hulu, Hulu Live, and ESPN+.[2]

McKool Smith, P.C.
Los Angeles, CA

---

[1] The Walt Disney Company, 2025 Form 10-K, at 2.
[2] The Walt Disney Company, 2023 Form 10-K, at 86; *see also Adeia Techs. Inc. et al. v. The Walt Disney Company et al.*, No. 1:24-cv-01231 (D. Del. 2024), Dkt. 18 at 1.

COMPLAINT

7.     Defendant Disney DTC LLC is a Delaware limited liability company with a principal place of business at 500 South Buena Vista Street, Burbank, California 91521. Disney DTC LLC has designated CSC–Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Sacramento, California 95833 as its agent for service of process.[3] On information and belief, Disney DTC LLC is an indirectly wholly owned subsidiary of The Walt Disney Company that is involved in content planning and management, third party media sales efforts, affiliate marketing, affiliate related business operations, contract negotiation for distribution deals, and procuring content delivery network and cloud computing for Disney+, Hulu, Hulu Live, and ESPN+.[4]

8.     Defendant Disney Streaming Services LLC ("DSS") is a Delaware limited liability company with a principal place of business at 500 South Buena Vista Street, Burbank, California, 91521. Disney Streaming Services LLC has designated CSC–Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Sacramento, California 95833 as its agent for service of process. On information and belief, Disney Streaming Services LLC is an indirectly wholly owned subsidiary of the Walt Disney Company and is involved in financial and marketing activities for Disney+, Hulu, Hulu Live, and ESPN+.[5]

---

[3] Public filings indicate that Disney DTC LLC may now be known as Disney Platform Distribution, Inc. *See e.g.*, *In re Disney DTC, LLC*, No. 05-23-00485-CV, 2024 WL 358117 (Tex. App.—Dallas Jan. 31, 2024). On this basis, all allegations relating to Disney DTC LLC shall also apply to Disney Platform Distribution, Inc.

[4] The "Terms of Use" page on the ESPN website links to a Disney webpage that states, "Disney DTC LLC and/or its affiliates and subsidiaries (collectively, 'Disney' 'we' or 'us') are pleased to provide to you certain websites, software, applications, content, products, and services in any media format or channel, now known or hereafter devised ('Disney Products' and 'Products'), which may be branded Disney, ABC, ESPN, Marvel, Pixar, Lucasfilm, FX, Searchlight Pictures, 20th Century Studios, National Geographic, or another brand owned or licensed by Disney." *English – Disney Terms of Use – United States*, THE WALT DISNEY COMPANY (May 24, 2024), https://disneytermsofuse.com/english/; *see also Adeia Techs. Inc. et al. v. The Walt Disney Company et al.*, No. 1:24-cv-01231 (D. Del. 2024), Dkt. 18 at 1.

[5] Disney Streaming Services, LLC is listed as the distribution entity for both Disney+ and ESPN+ on

3

COMPLAINT

9.  Disney Entertainment & Sports LLC[6] ("DES") is a Delaware limited liability company with a principal place of business at 500 South Buena Vista Street, Burbank, California, 91521. Disney Entertainment & Sports LLC has designated CSC–Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Sacramento, California 95833 as its agent for service of process. On information and belief, Disney Entertainment & Sports LLC is an indirectly wholly owned subsidiary of the Walt Disney Company and is involved in designing and maintaining the websites for Disney+, Hulu, Hulu Live, and ESPN+.[7]

10.  Defendant Disney Platform Distribution, Inc. ("DPD") is a Delaware corporation with a principal place of business at 500 South Buena Vista Street, Burbank, California, 91521. Disney Platform Distribution, Inc. has designated CSC–Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Sacramento, California 95833 as its agent for service of process. On information and belief, Disney Platform Distribution, Inc. is an indirectly wholly owned subsidiary of The Walt Disney Company that is involved in various aspects of Disney+, Hulu, Hulu Live, and ESPN+ such as managing distribution efforts, affiliate marketing, affiliate-related business operations, contract negotiation, content delivery networks, and cloud computing services.[8]

---

the Disney website. *The Walt Disney Family of Companies*, THE WALT DISNEY COMPANY, https://privacy.thewaltdisneycompany.com/en/company-overview/. *See also Adeia Techs. Inc. et al. v. The Walt Disney Company et al.*, No. 1:24-cv-01231 (D. Del. 2024), Dkt. 18 at 2.

[6] Delaware and California public filings indicate that Disney Entertainment & Sports LLC was previously called Disney Streaming Technology LLC and/or Disney Technology LLC. For the avoidance of doubt, and with the goal to provide adequate notice to the appropriate party, all allegations relating to Disney Entertainment & Sports LLC shall also apply to Disney Streaming Technology LLC and Disney Technology LLC, and vice versa.

[7] *See e.g., Adeia Techs. Inc. et al. v. The Walt Disney Company et al.*, No. 1:24-cv-01231 (D. Del. 2024), Dkt. 18 at 2.

[8] The subscriber agreement for Disney+ and ESPN+ is hosted on a Disney webpage and refers to Disney Platform Distribution, Inc. as the relevant entity. *Disney+ and ESPN+ Subscriber Agreement*, DISNEY+ (Jan. 25, 2024), https://www.disneyplus.com/legal/subscriber-agreement. *See also Adeia Techs. Inc. et al. v. The Walt Disney Company et al.*, No. 1:24-cv-01231 (D. Del. 2024), Dkt. 18 at 2.

4

COMPLAINT

11.    Defendant BAMTech, LLC ("BAMTech") is a Delaware limited liability company with a principal place of business at 1211 Avenue of the Americas, New York, New York 10036. BAMTech, LLC has designated CSC–Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Sacramento, California 95833 as its agent for service of process. On information and belief, BAMTech, LLC is an indirect subsidiary of The Walt Disney Company, which owns 80% of BAMTech, and Hearst Brazil, Inc., a subsidiary of The Hearst Corporation, which owns the remaining 20% of BAMTech.[9] On information and belief, BAMTech, LLC is responsible for developing and maintaining the ESPN+ website,[10] and provides technology that is used in Disney+ and Hulu.[11]

12.    Defendant Hulu, LLC ("Hulu") is a Delaware limited liability company with a principal place of business at 2500 Broadway, Santa Monica, CA 90404. Hulu, LLC has designated CSC–Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Sacramento, California 95833 as its agent for service of process. On information and belief, Hulu, LLC is an indirect subsidiary of the Walt Disney Company. On information and belief, Hulu, LLC operates Hulu and Hulu Live.[12]

13.    Defendant ESPN, Inc. ("ESPN") is a Delaware corporation with a principal place of business at ESPN Plaza, Bristol, Connecticut 06010. ESPN, Inc. has

---

[9] *Adeia Techs. Inc. et al. v. The Walt Disney Company et al.*, No. 1:24-cv-01231 (D. Del. 2024), Dkt. 18 at 2.

[10] The Walt Disney Company, 2024 Form 10-K, at 89 (stating that The Walt Disney Company purchased MLB's 15% interest in BAMTech LLC in November 2022). The "Privacy Policy" tab on the BAMTech website links to a page on a Disney website. The subscriber agreement for Disney+ and ESPN+ is hosted on a Disney webpage and refers to BAMTech, LLC as the relevant entity. *Disney+ and ESPN+ Subscriber Agreement*, DISNEY+ (Jan. 25, 2024), https://www.disneyplus.com/legal/subscriber-agreement.

[11] Alex Werpin, *Disney Pays $900M for MLB's Remaining Stake in Streaming Company BAMTech*, HOLLYWOOD REPORTER (Nov. 29, 2022), https://www.hollywoodreporter.com/business/digital/disney-pays-900m-for-bamtech-1235271788/.

[12] The Walt Disney Company, 2024 Form 10-K, at 88-89 (stating that The Walt Disney Company owns 67% of Hulu and purchased NBC Universal's 33% interest in Hulu in November 2023). The "Privacy Policy" tab on the Hulu website links to a page on a Disney website.

5

COMPLAINT

designated CSC–Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Sacramento, California 95833 as its agent for service of process. On information and belief, ESPN, Inc. is an indirect subsidiary of the Walt Disney Company, which owns 80% of ESPN, and Hearst Brazil, Inc., a subsidiary of The Hearst Corporation, which owns the remaining 20% of ESPN.[13] On information and belief, ESPN, Inc. manages and operates ESPN+.[14]

**DEFENDANTS' ACCUSED INSTRUMENTALITIES**

14.     Defendants offer the Disney+, Hulu, Hulu Live, and ESPN+ streaming platforms ("Disney platforms"). For example, Defendants offer, distribute, and encourage users to download and use the Disney+, Hulu, and ESPN+ applications ("Disney applications") through which subscribers can access Disney platforms.

15.     Disney uploads video content to Disney's servers. Disney's transcoders are used, for example, in decoding uploaded video and re-encoding or encoding video for distribution and consumption by Disney subscribers.

16.     Disney's decoders (including, for example, those in the Disney applications, those on Disney servers, and those used in playback testing of Disney's video content) that decode video according to the H.265 Standard and Disney's encoders (including, for example, those in the Disney applications and those on Disney servers) that encode video into H.265-compliant formats infringe the Asserted Patents. Collectively, these decoders and encoders are referred to herein as the "Accused Instrumentalities." A copy of the H.265 Standard is attached to this Complaint as Exhibit 1.

[13] *Adeia Techs. Inc. et al. v. The Walt Disney Company et al.*, No. 1:24-cv-01231 (D. Del. 2024), Dkt. 18 at 2.

[14] The Walt Disney Company, 2024 Form 10-K, at 7 (stating that ESPN is 80% owned by the Walt Disney Company). The "Terms of Use" tab on the ESPN website links to a page on a Disney website.

McKool Smith, P.C.
Los Angeles, CA

6

**McKool Smith, P.C.**
**Los Angeles, CA**

## JURISDICTION AND VENUE

17. This action includes claims of patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 et seq. This Court has exclusive subject matter jurisdiction over the patent infringement claims in this case under 28 U.S.C. §§ 1331 and 1338.

18. This Court has supplemental jurisdiction over all claims other than the patent infringement claims in this case under 28 U.S.C. § 1367, 2201, and 2202.

19. An actual controversy over all counts exists between the parties.

20. Defendants are subject to this Court's personal jurisdiction consistent with the principles of due process and/or the California Long Arm Statute. This Court has general personal jurisdiction over Defendants because each of their affiliations with the State of California are so systematic and continuous to render each Defendant at home in California.

21. On information and belief, Defendants regularly conduct business in California, including in this District, and purposefully avail themselves of the privileges of conducting business in California and this District. In particular, on information and belief, Defendants, and/or their agents and/or intermediaries, make, use, import, offer for sale, sell, and/or advertise their products and affiliated services in California and this District, including but not limited to the Accused Instrumentalities, sufficient to give rise to jurisdiction. On information and belief, Defendants have placed and continue to place Accused Instrumentalities into the stream of commerce, via an established distribution channel, with the knowledge and/or understanding that such products are sold in the United States, including in California, and specifically including in this District. Defendants are registered to do business in California and maintain agents authorized to receive service of process within California.

22. On information and belief, Defendants derive substantial revenue from the sale of Accused Instrumentalities distributed within California, including within

7

COMPLAINT

this District, and/or expect or should reasonably expect their actions to have consequences in California. In addition, on information and belief, Defendants knowingly induce, and continue to knowingly induce, infringement of the Asserted Patents within California and within this District by offering for sale, selling, and/or contracting with others to market Accused Instrumentalities with the intent to facilitate infringing use by others and by creating and/or disseminating product information and other materials providing instruction for infringing use.

23.     Venue is proper in the Central District of California pursuant to 28 U.S.C. §§ 1391(b)-(c) and/or 1400(b) because Defendants have committed acts of infringement in this District and have regular and established places of business in this District. By way of example and without limitation, Defendants make, use, sell, offer to sell, and/or import products and/or services that are accused of infringing the Asserted Patents into and/or within this District and maintain a permanent and/or continuing presence within this District.

24.     Defendants maintain multiple places of business within this District. For example, The Walt Disney Company, Disney Entertainment & Sports LLC, and Disney Streaming Services LLC, all maintain an office in this District at 500 South Buena Vista Street, Burbank, California, 91521.

25.     Defendant ESPN, Inc. maintains an office within the Central District of California, which is located at 800 W. Olympic Blvd., Los Angeles, CA 90015.

26.     Defendant Hulu, LLC maintains its headquarters at 2500 Broadway, Santa Monica, CA 90404.

27.     In a recent action, Defendants have admitted that the Central District of California is a proper venue for patent infringement actions against them. *See InterDigital, Inc. et al. v. The Walt Disney Company et al.*, No. 2:25-cv-00895 (C.D. Cal. 2025), Dkt. 42 ¶ 19 (C.D. Cal. March 31, 2025) ("Disney does not dispute personal jurisdiction exists in this judicial district for purposes of this action only."); *Id.* at ¶ 20 (same); *Id.* at ¶ 21 ("Disney does not dispute venue is proper in this judicial

8

COMPLAINT

district for this action only."); *Id.* at ¶ 25 ("Disney admits that it has conducted certain business activities in this District."); *WAG Acquisition, LLC v. The Walt Disney Company et al.*, No. 2:21-cv-08230 (C.D. Cal. 2021), Dkt. 74 ¶ 3 (C.D. Cal. October 18, 2021) ("Disney admits that it has a regular and established place of business in the District and that, in this case, venue is proper in the District."); *Id.* at Dkt. 90 ¶ 3 ("DSS and Hulu admit that they have a regular and established place of business in the District and that, in this case, venue is proper in the District."); *Id.* at Dkt. 99 ¶ 3 ("[DES], DPD, ESPN, and BAMTech admit they have a regular and established place of business in the District and that, in this case, venue is proper in the District."); *InCom Corporation v. The Walt Disney Company et al.*, No 2:15-cv-03011 (C.D. Cal. 2015), Dkt. 43 ¶¶ 2, 6 ("Defendants admit that TWDC is a corporation organized under the laws of the State of Delaware and has its principal place of business at 500 S. Buena Vista Street, Burbank, California [. . .] TWDC admits that venue is proper under 28 U.S.C. § 1400(b) with respect to TWDC.").

## FACTUAL BACKGROUND

### A.   *Velos' Investment in Video Innovations*

28.   Velos owns patents that constitute significant contributions to video technologies that enable many features that are commonplace and expected of today's video services, social media, and consumer electronics.

29.   Over the last few decades, internet traffic has evolved from simple, text-based interfaces to a plethora of media, including video. As technology has evolved, the importance and use of video has skyrocketed. Video coding technologies, including the H.265 Standard, are crucial to the development and evolution of modern communication, particularly as video traffic, including streaming video traffic, has become an increasingly outsized share of total consumer Internet traffic.

30.   The Joint Collaborative Team on Video Coding ("JCT-VC") developed the H.265 Standard. The inventors of the Asserted Patents provided significant contributions to JCT-VC while employed by Sharp Corporation and Research in

Motion Limited (now BlackBerry). Several of these contributions are related to claims of the Asserted Patents.

31.    The H.265 Standard published as ITU-T Recommendation H.265 High Efficiency Video Coding and enables consumers to decode higher quality video with less bandwidth. The H.265 Standard is one of the most prevalent video decoding standards in the world.

32.    Velos has made significant investments in video technology since 201 and has many patents related to video coding technologies. These investments include patents, including some of the Asserted Patents, with at least some claims essential to the H.265 Standard.

**B.    *The ITU and the H.265 Standardization Process***

33.    Certain claims of Velos' patents relate to the H.265 Standard.

34.    The H.265 Standard was produced by the International Telecommunication Union (the "ITU"). The ITU was formed in 1865 at the International Telegraph Convention and became a specialized agency of the United Nations in 1947. The ITU is responsible for issues that concern information and communication technologies. The ITU is organized into various sectors. The sector most relevant to the H.265 standard is Telecommunication Standardization or "ITU-T." The mission of ITU-T is to produce telecommunications-related standards, which are referred to as "Recommendations."

35.    Within ITU-T, members from all around the world come together and propose technological solutions for inclusion in the draft Recommendations. This is a collaborative process where the goal is to draft Recommendations with the best available technology to ensure the standards are of a high quality.

36.    The contributions that are ultimately included in a Recommendation are often covered by one or more patent claims. The ITU developed the Common Patent Policy to address the usage of patented technologies within its standards.

McKool Smith, P.C.
Los Angeles, CA

COMPLAINT

McKool Smith, P.C.
Los Angeles, CA

37.     The ITU published Guidelines for Implementation of the Common Patent Policy ("the Guidelines"). The Guidelines explain that the Common Patent Policy "was drafted in its operative part as a checklist, covering the three different cases which may arise if a Recommendation | Deliverable requires licenses for Patents to be practices or implemented, fully or partly." *Guidelines for Implementation of the Common Patent Policy for ITU-T/ITU-R/ISO/IEC*, INTERNATIONAL ELECTROTECHNICAL COMMISSION (IEC), INTERNATIONAL ORGANIZATION FOR STANDARDIZATION (ISO), AND INTERNATIONAL TELECOMMUNICATION UNION (ITU) (Dec. 16, 2022), Rev. 5.0 at 1, https://www.itu.int/dms_pub/itu-t/oth/04/04/ T04040000010006PDFE.pdf.

38.     The "code of practice" of the Common Patent Policy states:

[2] If a Recommendation | Deliverable is developed and such information as referred to in paragraph 1 has been disclosed, three different situations may arise:

[2.1] The patent holder is willing to negotiate licenses free of charge with other parties on a non-discriminatory basis on reasonable terms and conditions. Such negotiations are left to the parties concerned and are performed outside ITU-T/ITU-R/ISO/IEC.

[2.2] The patent holder is willing to negotiate licenses with other parties on a non-discriminatory basis on reasonable terms and conditions. Such negotiations are left to the parties concerned and are performed outside ITU-T/ITU-R/ISO/IEC.

[2.3] The patent holder is not willing to comply with the provisions of either paragraph 2.1 or paragraph 2.2; in such case, the Recommendation | Deliverable shall not include provisions depending on the patent.

[3] Whatever case applies (2.1, 2.2, or 2.3), the patent holder has to provide a written statement to be filed at ITU-TSB, ITU-BR or the offices of the CEOs of ISO or IEC, respectively, using the appropriate "Patent Statement and Licensing Declaration" form. This statement must not include additional provisions, conditions, or any other exclusion clauses in excess of what is provided for each case in the corresponding boxes of the form.

COMPLAINT

*Id.* at 9-10.

39.     The ITU defines "essential" to refer only to patent claims that are necessary for implementation of a specific Recommendation. The Guidelines define the term "Patent" to be "those claims contained in and identified by patents, utility models or other similar statutory rights based on inventions (including applications for any of these) solely to the extent that any such claims are essential to the implementation of a Recommendation | Deliverable. Essential patents are patents that would be required to implement a specific Recommendation | Deliverable." *Id.* at 22. The definition of "Patent" provided by the Guidelines is in the Patent Statement and Declaration Form (Annex 2) that is completed by patent holders who may have patent claims essential to the H.265 Standard. The Patent Statement and Licensing Declaration Form states that identifying specific patents on the form is optional, but not required.

40.     The H.265 Recommendation specifies the implementation of decoders but not encoders. *See* Ex. 1 (ITU-T H.265 Recommendation) at 5 (defining (i) "decoding process" as "[t]he process specified in this Specification that reads a bitstream and derives decoded pictures from it" and (ii) "encoding process" as "[a] process not specified in the Specification that produces a *bitstream* conforming to this Specification.").

**C.     *Compliance with the ITU Common Patent Policy and Relevant Declarations***

41.     Velos owns many patents related to video decoding technology. Many of these innovations were voluntarily contributed to the standard-setting process at the ITU through technical contributions. For example, the inventors of the Asserted Patents made several important contributions during H.265 development while employed by Sharp Corporation and Research in Motion Limited (now BlackBerry). Industry members attending the standardization meetings chose to adopt this technology into the standards because of its benefits and merit.

42.    Consistent with the ITU Common Patent Policy, the prior owners of the Asserted Patents timely notified standard setting participants that they may obtain patent claims on their contributions, including by submitting Patent Statement and Licensing Declarations to the ITU in which they declared in good faith that they are prepared to grant licenses to the essential claims of the relevant patents on reasonable and non-discriminatory (RAND) terms and conditions.

43.    Velos recognizes the applicable obligations under the ITU Common Patent Policy and is prepared to grant licenses for its H.265 essential decoding claims on RAND terms and conditions.

**D.    _Velos' Negotiations with Disney_**

44.    Velos maintains a global portfolio of over 450 patents in the field of video technology. Velos licenses its video patents both directly and through the Avanci Video patent pool.

45.    Representatives from Avanci Video reached out to Disney in June of 2023 to inform them about Avanci Video's licensing program. During these discussions, Avanci Video informed Disney that Velos was a patent owner and licensor in Avanci Video's licensing program. Avanci Video submitted a licensing offer to Disney in December 2025. Upon information and belief, this offer was made on RAND terms and conditions.

46.    As of the filing of this Complaint, Disney has not accepted Avanci Video's licensing offer.

47.    In addition to Velos' negotiations with Disney through Avanci Video, Velos also attempted to negotiate directly with Disney. Velos sent Disney a letter on May 15, 2025 seeking to engage in bilateral negotiations for a license to Velos' video patents. Disney responded on May 28, 2025, rebuffing Velos' offer in favor of continuing to negotiate with Avanci Video instead.

48.    Velos responded to Disney's May 28, 2025 letter via an email sent from representatives from Techstream LLC, Velos' parent company. This letter indicated

13

COMPLAINT

that Velos would continue to be open to engaging in bilateral negotiations with Disney, while acknowledging Disney's indicated preference to only negotiate with Avanci Video at this time.

49.     When Disney's negotiations with Avanci Video failed to result in a licensing agreement, Velos followed up with a renewed attempt to engage in bilateral licensing negotiations in an email sent on December 17, 2025. The December 17, 2025 email included as an attachment, a list of patents in Velos' video patent portfolio. This list included each of the Asserted Patents in this Complaint.

50.     In its response, Disney did not take any meaningful steps to engage in the negotiation process for a bilateral license and instead sought to further delay any discussion with Velos.

51.     Disney did not attempt to communicate with or engage in any negotiations with Velos at any point afterwards as of the filing of this Complaint.

52.     Disney remains unlicensed to Velos' video patents, including the Asserted Patents.

### E.     *Defendants' Infringing Streaming Services*

53.     The streaming services that collectively infringe the Asserted Patents are Disney+, Hulu, Hulu Live (sometimes referred to as Hulu + Live TV), and ESPN+. These may be referred to herein as the Accused Instrumentalities.

54.     Disney+ is an on-demand streaming service that offers media content from Disney, Pixar, Marvel, Star Wars, and National Geographic. Disney+ also provides access to certain on-demand media content from Hulu for certain subscribers via bundled plans. Disney+ offers "hundreds of films, thousands of episodes and many Disney+ Originals."[15] The subscription allows users to stream across multiple supported devices at once.[16] Disney+ supports streaming on web

---

[15] *See Getting started with Disney+*, DISNEY+ HELP CENTER, https://help.disneyplus.com/article/disneyplus-introduction (last accessed March 2026).

[16] *See id*.

browsers, mobile devices, tablets, streaming sticks, gaming consoles, smart TVs, and set-top boxes.

55.    Disney+ uses HEVC-compliant formats to stream video[17] and to deliver 3D movies via Apple Vision.[18]

56.    Hulu is a streaming service and offers both live and on-demand content. Hulu provides access to television shows from major U.S. broadcast networks, as well as libraries of television series and films—including Hulu Originals and other content available exclusively on Hulu.[19] Hulu supports streaming on web browsers, mobile devices, tablets, streaming sticks, gaming consoles, smart TVs, and set-top boxes. Hulu also offers a Live TV component to its subscriptions that includes access to 95+ live television channels.[20]  Hulu Live subscribers can watch live  sports, breaking news, awards shows, primetime dramas, daytime soaps, local teams and weather forecasts, as well as other on-demand content in the Hulu streaming library.[21]

57.    Hulu uses HEVC-compliant formats for at least some of its streaming[22] and employs multiple content delivery networks.

---

[17] *Google, Netflix & YouTube to require AV1 video decoding support*, FLATPANELSHD.COM, https://www.flatpanelshd.com/news.php?subaction=showfull&id=1613043929#:~:text=AV1%20is%20gaining%20momentum,under%20'OS%20&%20features').

[18] *Disney+ on Apple Vision Pro Ushers in a New Era of Storytelling Innovation and Immersive Entertainment*, DISNEY+, https://press.disneyplus.com/news/disney-plus-on-apple-vision-pro-ushers-in-a-new-era-of-storytelling-innovation-and-immersive-entertainment; *New report Highlights Impact of HEVC Codec on Streaming Industry*, INTERDIGITAL, INC., https://finance.yahoo.com/news/report-highlights-impact-hevc-codec-093000074.html?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS8&guce_referrer_sig=AQAAAH6eP5B3zvcv3Oue0_7YQ13jP6cb6SLsQFlsqMPPu0xPxdW_uvyQH_F2OzN_aEUS2shIIBRBhm1tdM7Vfe9jlfHKEDh0bS8uHsrto3PjNKjcUQv_NMAiihQYsjkLPm3MnHGhCVhuCGYiUXCIGOO9eM0kA-RNCbtL4yfr4TkP57fx.

[19] *See About Hulu*, HULU PRESS, https://press.hulu.com/corporate/.

[20] *Id.*

[21] *See Hulu + Live TV Plans*, HULU HELP CENTER, https://help.hulu.com/article/hulu-what-is-hulu-live-tv.

[22] *What Are HEVC and AVC? H.265 and H.264 Video Codecs Explained*, TOM'S HARDWARE, https://www.tomshardware.com/reference/h264-h265-hevc-codec-definition; *New report Highlights Impact of HEVC Codec on Streaming Industry*, INTERDIGITAL, INC.,

McKool Smith, P.C.
Los Angeles, CA

58.    ESPN+ is a streaming service that allows users to stream live sports from around the world and media content from sports-media personalities. An ESPN+ subscription provides users access to live events from UFC, NFL, NHL, FA Cup, MLB, Grand Slam tennis, PGA TOUR LIVE, LaLiga, Top Rank Boxing, and more—plus a variety of college sports, including football, basketball, baseball, and lacrosse, from over 20 conferences.[23] ESPN+ supports streaming on web browsers, mobile devices, tablets, streaming sticks, gaming consoles, smart TVs, and set-top boxes.[24]

59.    Upon information and belief, ESPN+ uses HEVC-compliant formats for at least some of its streaming.

60.    Disney Streaming Technology LLC (now known as Disney Entertainment & Sports LLC) is a party to the terms of use of a Disney Streaming technology blog hosted on the Medium website, titled "The Art of Possible," which displays the Hulu, Disney+, and ESPN+ logos next to the Disney Streaming logo at the top of the page.[25]

61.    Disney Platform Distribution, Inc. is a party to the subscriber agreement for Disney+.[26]

62.    BAMTech, LLC is a party to the subscriber agreement for ESPN+.[27]

63.    Hulu, LLC is a party to the subscriber agreement for Hulu and Hulu Live.[28]

---

https://finance.yahoo.com/news/report-highlights-impact-hevc-codec-093000074.html?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS8&guce_referrer_sig=AQAAAH6eP5B3zvcv3Oue0_7YQ13jP6cb6SLsQFlsqMPPu0xPxdW_uvyQH_F2OzN_aEUS2shIIBRBhm1tdM7Vfe9jlfHKEDh0bS8uHsrto3PjNKjcUQv_NMAiihQYsjkLPm3MnHGhCVhuCGYiUXCIGOO9eM0kA-RNCbtL4yfr4TkP57fx.

[23] *See, e.g., Getting Started With ESPN+*, ESPN Support, https://support.espn.com/hc/en-us/sections/13616798199188-Getting-Started (last accessed March 2026).

[24] *See, e.g., id.*

[25] *See* The Art of Possible, Medium, https://medium.com/disney-streaming.

[26] *See Subscriber Agreement*, Disney+ (Jan. 25, 2024), https://www.disneyplus.com/legal/subscriber-agreement.

[27] *Id.*

[28] *Hulu Subscriber Agreement*, Hulu (Oct. 21, 2024), https://www.hulu.com/subscriber_agreement.

16

COMPLAINT

64.    When an ESPN+ subscriber is logged in, the "Manage Your Account" page on the ESPN+ website lists the subscriber's account as a "MyDisney" account. The subscriber agreement link at the bottom of this page on the ESPN+ website links to a subscriber agreement webpage hosted on the Disney+ website. The ESPN+ website provides a link for the subscriber to manage his or her MyDisney account, which links to a page on a Disney website (my.disney.com).

65.    Disney+ and ESPN+ share a subscriber agreement that is hosted on the Disney+ website.

66.    When a Hulu subscriber is logged in, the "Manage Your Account" page on the Hulu website lists the subscriber's account as a "MyDisney" account. The Hulu website provides a link for the subscriber to manage his or her MyDisney account, which links to a page on a Disney website (my.disney.com).

67.    When a Disney+ subscriber is logged in, the "Manage Your Account" page on the Disney+ website lists the subscriber's account as a "MyDisney" account. The Disney+ website provides a link for the subscriber to manage his or her MyDisney account, which links to a page on a Disney website (my.disney.com).

68.    Further, the privacy policy for each Accused Streaming Service's website links to The Walt Disney Company website's privacy policy, https://privacy.thewaltdisneycompany.com/en/.[29]

69.    Subscriptions to Disney+, Hulu, and ESPN+ are sold through and offered for sale on the Disney+ website.

70.    Subscriptions to Disney+, Hulu, Hulu Live, and ESPN+ are sold through offered for sale on the Hulu website.

---

[29] *See generally* ESPN+, https://plus.espn.com/ (scroll to the bottom of the page and click "Privacy Policy"); Disney+, https://www.disneyplus.com/ (scroll to the bottom of the page and click "Privacy Policy"); Hulu, https://www.hulu.com/welcome (scroll to the bottom of the page and click "Privacy Policy").

McKool Smith, P.C.
Los Angeles, CA

17

COMPLAINT

71. Subscriptions to ESPN+ are sold through and offered for sale on the ESPN+ website.

72. Subscriptions to Hulu Live include subscriptions to Disney+ and ESPN+.

73. The Disney+ website directs users to the Hulu website to sign up for subscriptions to Hulu Live.

74. The ESPN+ website directs users to the Disney+ or Hulu websites to sign up for subscriptions to Disney+, Hulu, and Hulu Live.

75. The Accused Instrumentalities (*i.e.*, streaming services) and/or Defendants share backend technology.

76. For example, according to Disney, "several shared-service organizations across the company [] support both Disney Entertainment and ESPN, facilitating company-wide efficiencies and creating a more cost-effective, coordinated, and streamlined approach to operations. These include Product and Technology."[30]

77. As another example, the Disney Entertainment & ESPN Technology business "design[s] and build[s] the infrastructure that [powers] Disney's media, advertising, and distribution businesses," including products and platforms "from Disney+ and Hulu, to ABC News and Entertainment, to ESPN and ESPN+, and much more."[31]

78. Furthermore, "Disney Entertainment and ESPN Technology (DE&E Technology) provides the technological backbone and product development for Disney's two media business units," which include Disney+, Hulu, and ESPN+.[32]

---

[30] *The Walt Disney Company Announces Strategic Restructuring, Restoring Accountability To Creative Businesses*, THE WALT DISNEY COMPANY (Feb. 9, 2023), https://thewaltdisneycompany.com/the-walt-disney-company-announces-strategic-restructuring-restoring-accountability-to-creative-businesses/.
[31] *Sr. Software Engineer (C/C++ or Rust)*, DISNEY CAREERS (Aug. 21, 2024), https://www.disneycareers.com/en/job/-/sr-software-engineer-c-c-or-rust/391/69022326112.
[32] *Id.*

18

COMPLAINT

McKool Smith, P.C.
Los Angeles, CA

79.   As another example, "[t]he Product & Data Engineering team is responsible for end to end development for Disney's world-class consumer-facing products, including streaming platforms Disney+, Hulu, and ESPN+."[33]

80.   As another example, "BAMTech technology powers Disney+, Hulu and Disney's other offerings."[34]

81.   The Accused Instrumentalities (*i.e.*, streaming services) and/or Defendants share advertising and sales functions.

82.   For example, according to Disney, "several shared-service organizations across the company [] support both Disney Entertainment and ESPN, facilitating company-wide efficiencies and creating a more cost-effective, coordinated, and streamlined approach to operations. These include . . . Advertising Sales."[35]

83.   The Accused Instrumentalities (*i.e.*, streaming services) and/or Defendants share platform distribution functions.

84.   For example, according to Disney, "several shared-service organizations across the company [] support both Disney Entertainment and ESPN, facilitating company-wide efficiencies and creating a more cost-effective, coordinated, and streamlined approach to operations. These include . . . Platform Distribution."[36]

85.   The Walt Disney Company's Disney Entertainment segment houses Disney+ and Hulu. The Walt Disney Company's ESPN segment houses ESPN+.[37]

---

[33] *Senior Software Engineer*, DISNEY CAREERS (Nov. 6, 2024), https://www.disneycareers.com/en/job/-/sr-software-engineer/391/72137052336.

[34] Alex Werpin, *Disney Pays $900M for MLB's Remaining Stake in Streaming Company BAMTech*, HOLLYWOOD REPORTER (Nov. 29, 2022), https://www.hollywoodreporter.com/business/digital/disney-pays-900m-for-bamtech-1235271788/.

[35] *The Walt Disney Company Announces Strategic Restructuring, Restoring Accountability To Creative Businesses*, THE WALT DISNEY COMPANY (Feb. 9, 2023), https://thewaltdisneycompany.com/the-walt-disney-company-announces-strategic-restructuring-restoring-accountability-to-creative-businesses/.

[36] *Id.*

[37] *The Walt Disney Company Announces Strategic Restructuring, Restoring Accountability To Creative Businesses*, THE WALT DISNEY COMPANY (Feb. 9, 2023), https://thewaltdisneycompany.com/the-walt-disney-company-announces-strategic-restructuring-restoring-accountability-to-creative-businesses/.

COMPLAINT

McKool Smith, P.C.
Los Angeles, CA

## F.    *Defendants' Actions to Infringe and Induce Infringement*

86.    The Walt Disney Company directly infringes the claims of the Asserted Patents by encoding and decoding video with technology covered by the Asserted Patents. The Walt Disney Company indirectly infringes the claims of the Asserted Patents by inducing a third party to encode and decode video with technology covered by the Asserted Patents through the use of Disney+, Hulu, Hulu Live, and ESPN+.

87.    Disney Media and Entertainment Distribution LLC directly infringes the claims of the Asserted Patents by encoding and decdoing video with technology covered by the Asserted Patents. Disney Media and Entertainment Distribution LLC indirectly infringes the claims of the Asserted Patents by inducing a third party to encode and decode video with technology covered by the Asserted Patents through the use of Disney+, Hulu, Hulu Live, and ESPN+.

88.    Disney Platform Distribution, Inc. directly infringes the claims of the Asserted Patents by encoding and decoding video with technology covered by the Asserted Patents. Disney Platform Distribution, Inc. indirectly infringes the claims of the Asserted Patents by inducing a third party to encode and decode video with technology covered by the Asserted Patents through the use of Disney+, Hulu, Hulu Live, and ESPN+.

89.    Disney Streaming Services LLC directly infringes the claims of the Asserted Patents by encoding and decoding video with technology covered by the Asserted Patents. Disney Streaming Services LLC indirectly infringes the claims of the Asserted Patents by inducing a third party to encode and decode video with technology covered by the Asserted Patents through the use of Disney+, Hulu, Hulu Live, and ESPN+.

90.    Disney Entertainment & Sports LLC directly infringes the claims of the Asserted Patents by encoding and decoding video with technology covered by the Asserted Patents. Disney Entertainment & Sports LLC indirectly infringes the claims of the Asserted Patents by inducing a third party to encode and decode video with

McKool Smith, P.C.
Los Angeles, CA

COMPLAINT

technology covered by the Asserted Patents through the use of Disney+, Hulu, Hulu Live, and ESPN+.

91.    Disney DTC LLC directly infringes the claims of the Asserted Patents by encoding and decoding video with technology covered by the Asserted Patents. Disney DTC LLC indirectly infringes the claims of the Asserted Patents by inducing a third party to encode and decode video with technology covered by the Asserted Patents through the use of Disney+, Hulu, Hulu Live, and ESPN+.

92.    BAMTech, LLC directly infringes the claims of the Asserted Patents by encoding and decoding video with technology covered by the Asserted Patents. BAMTech, LLC indirectly infringes the claims of the Asserted Patents by inducing a third party to encode and decode video with technology covered by the Asserted Patents through the use of Disney+, Hulu, Hulu Live, and ESPN+.

93.    Hulu, LLC directly infringes the claims of the Asserted Patents by encoding and decoding video with technology covered by the Asserted Patents. Hulu, LLC indirectly infringes the claims of the Asserted Patents by inducing a third party to encode and decode video with technology covered by the Asserted Patents through the use of Disney+, Hulu, Hulu Live, and ESPN+.

94.    ESPN, Inc. directly infringes the claims of the Asserted Patents by encoding and decoding video with technology covered by the Asserted Patents. ESPN, Inc. indirectly infringes the claims of the Asserted Patents by inducing a third party to encode and decode video with technology covered by the Asserted Patents through the use of Disney+, Hulu, Hulu Live, and ESPN+.

95.    The Walt Disney Company has been placed on actual notice of infringement for each of the Asserted Patents.

96.    Disney Media and Entertainment Distribution LLC has been placed on actual notice of infringement for each of the Asserted Patents.

97.    Disney Platform Distribution, Inc. has been placed on actual notice of infringement for each of the Asserted Patents.

COMPLAINT

98.   Disney Streaming Services LLC has been placed on actual notice of infringement for each of the Asserted Patents.

99.   Disney Entertainment & Sports LLC has been placed on actual notice of infringement for each of the Asserted Patents.

100.   Disney DTC LLC has been placed on actual notice of infringement for each of the Asserted Patents.

101.   BAMTech, LLC has been placed on actual notice of infringement for each of the Asserted Patents.

102.   Hulu, LLC has been placed on actual notice of infringement for each of the Asserted Patents.

103.   ESPN, Inc. has been placed on actual notice of infringement for each of the Asserted Patents.

104.   The Walt Disney Company took the above actions intending to infringe and/or cause infringing acts by others, and/or it willfully blinded itself as to the existence of the Asserted Patents and the Accused Instrumentalities' infringement thereof.

105.   Disney Media and Entertainment Distribution LLC took the above actions intending to infringe and/or cause infringing acts by others, and/or it willfully blinded itself as to the existence of the Asserted Patents and the Accused Instrumentalities' infringement thereof.

106.   Disney Platform Distribution, Inc. took the above actions intending to infringe and/or cause infringing acts by others, and/or it willfully blinded itself as to the existence of the Asserted Patents and the Accused Instrumentalities' infringement thereof.

107.   Disney Streaming Services LLC took the above actions intending to infringe and/or cause infringing acts by others, and/or it willfully blinded itself as to the existence of the Asserted Patents and the Accused Instrumentalities' infringement thereof.

McKool Smith, P.C.
Los Angeles, CA

22

COMPLAINT

108.    Disney Entertainment & Sports LLC took the above actions intending to infringe and/or cause infringing acts by others, and/or it willfully blinded itself as to the existence of the Asserted Patents and the Accused Instrumentalities' infringement thereof.

109.    Disney DTC LLC took the above actions intending to infringe and/or cause infringing acts by others, and/or it willfully blinded itself as to the existence of the Asserted Patents and the Accused Instrumentalities' infringement thereof.

110.    BAMTech, LLC took the above actions intending to infringe and/or cause infringing acts by others, and/or it willfully blinded itself as to the existence of the Asserted Patents and the Accused Instrumentalities' infringement thereof.

111.    Hulu, LLC took the above actions intending to infringe and/or cause infringing acts by others, and/or it willfully blinded itself as to the existence of the Asserted Patents and the Accused Instrumentalities' infringement thereof.

112.    ESPN, Inc. took the above actions intending to infringe and/or cause infringing acts by others, and/or it willfully blinded itself as to the existence of the Asserted Patents and the Accused Instrumentalities' infringement thereof.

### THE ASSERTED PATENTS

113.    Velos complied with any applicable marking requirements under 35 U.S.C. § 287(a) at least because the asserted method claims to not require marking and/or there is nothing to mark.

### A. *U.S. Patent No. 11,627,338 ("the '338 Patent")*

114.    The '338 Patent, entitled "Significance map encoding and decoding using partition selection," issued on April 11, 2023, to inventors Gergely Ferenc Korodi, Jinwen Zan, and Dake He. The '338 Patent issued from U.S. Patent Application No. 17/688,703, filed on March 7, 2022, which is a continuation of U.S. Patent Application No. 17/102,218, filed on November 23, 2020 (now U.S. Patent No. 11,272,210), which is a continuation of U.S. Patent Application No. 16/597,829, filed on October 9, 2019 (now U.S. Patent No. 10,848,783), which is a continuation of U.S.

McKool Smith, P.C.
Los Angeles, CA

Patent Application No. 15/712,640, filed on September 22, 2017 (now U.S. Patent No. 10,448,052), which is a continuation of U.S. Patent Application No. 15/288,115, filed on October 7, 2016 (now U.S. Patent No. 9,774,885), which is a continuation of U.S. Patent Application No. 14/824,107, filed on August 12, 2105 (now U.S. Patent No. 9,491,486), which is a continuation of U.S. Patent Application No. 14/525,329, filed on October 28, 2014 (now U.S. Patent No. 9,143,801), which is a continuation of U.S. Patent Application No. 13/279,397, filed on October 24, 2011 (now U.S. Patent No. 8,891,630). The '338 Patent expires on October 24, 2031. A true and correct copy of the '338 Patent is attached as Exhibit 2.

115.    The '338 Patent is not directed to an abstract idea or any patent-ineligible concept. Instead, the '338 Patent is directed to novel and unconventional improvements to the process of video coding. The '338 Patent provides improvements over prior video coding techniques as described below that result in substantial benefits to video compression, video quality, and video playback by improving the efficiency of signaling maps of significant coefficients for transform blocks. These substantial benefits are enjoyed by Disney's subscribers when, for example, watching videos on Disney's platforms.

116.    Modern video coding methods use a combination of predictions from already-coded image data and residual information, showing the differences between the predictions and actual pixel data, to compress video information. Ex. 2 at 1:64-2:3. In the coding process, the residual information is subjected to a spectral transform function, such as a discrete cosine transform, to generate transform coefficients. *Id.* at 1:59-66, 2:4-6. The transform coefficients are then quantized and the result is entropy coded as a block. *Id.* at 1:59-64, 2:6-11. The quantized transform coefficients are broken down into different pieces of information for entropy coding, including the last significant coefficient position, indicating the last non-zero coefficient in the block, a significance map showing the positions in the block that contain non-zero coefficients, and the signs and magnitudes of non-zero coefficients. *Id.* at 2:12-21. The encoding of

McKool Smith, P.C.
Los Angeles, CA

24

the quantized transform coefficients typically makes up between 30 and 80% of the encoded data in a video bitstream. *Id.* at 2:21-23.

117.    In a context-adaptive binary arithmetic coding (CABAC) system, the context for a bit is used to record the history of the bits encoded using that context to determine the estimated probability of symbols. Ex. 2 at 7:38-42. Significance maps for 4x4 chroma or luma blocks cover 15 positions (excluding the bottom right position), each of which was conventionally assigned its own context. *Id.* at 2:24-30. These 4x4 blocks are used for 8x8, 16x16, and 32x32 transform units with additional contexts used in the partitioning of larger transform units, so that the encoder and decoder ultimately tracks and uses 88 distinct contexts. *Id.* at 2:30-39. The updating, storing, and retrieval of these contexts must be carried out at high computational speed. *Id.* at 2:39-40.

118.    The invention of the '338 Patent improves the coding of significance maps by using, for example, non-spatially-uniform partitioning of the significance map, providing some bit positions with their own contexts and assigning two or more other bit positions to common contexts. Ex. 2 at 3:8-13, 3:17-25, Fig. 4. This improved partitioning improves the operation of video coding computers by focusing the expense associated with context adaptation on significance map positions that benefit most from unshared contexts.

### B.    U.S. Patent No. 9,008,184 ("the '184 Patent")

119.    The '184 Patent, entitled "Multiple sign bit hiding within a transform unit," issued from April 14, 2015, to inventors Jing Wang, Xiang Yu, and Dake He. The '184 Patent issued from U.S. Patent Application No. 13/354,465, filed on January 20, 2012. The '184 Patent expires on January 5, 2033. A true and correct copy of the '184 Patent is attached as Exhibit 4.

120.    The '184 Patent is not directed to an abstract idea or any patent-ineligible concept. Instead, as described below, the '184 Patent is directed to novel and unconventional improvements to the process of video coding. The '184 Patent

25

provides improvements over prior video coding techniques that result in substantial benefits to video compression, video quality, and video playback, for example by improving the efficiency of the video coding process. These substantial benefits are enjoyed by Disney's subscribers when, for example, watching videos on Disney's platforms.

121.     The '184 Patent relates to "methods and encoders/decoders for encoding and decoding residual video data using sign bit hiding." Ex. 4 at 2:41-43. During the coding process, an "image or frame is divided into blocks, typically 4x4 or 8x8, and the blocks are spectrally transformed into coefficients, quantized, and entropy encoded." *Id.* at 1:41-43. The encoder or decoder "may use multi-level significance maps for encoding significant-coefficient flags." *Id.* at 2:43-45. These flags indicate "whether the corresponding position in the transform unit or the specified unit contains a non-zero coefficient or not." *Id.* at 4:3-5. Each significant coefficient of the transform domain coefficients "has a sign bit indicating whether the level of that non-zero coefficient is negative or positive." *Id.* at 7:43-45.

122.     Coding sign bits for each of the non-zero transform coefficients can take up a significant amount of data. Ex. 4 at 1:65-67. Sign bit hiding is a technique that seeks to reduce the amount of data involved in coding these sign bits where "the sign of the first coefficient in the transform unit is encoded by way of the parity of the sum of quantized coefficients in the transform unit." Ex. 4 at 7:49-51.

123.     Previously, sign bit hiding was applied only to entire transform blocks. Ex. 4 at 8:28-34. The inventors of the '184 Patent appreciated that larger transform blocks could be partitioned into "coefficient groups or 'sets of significant coefficient flags.'" *Id.* at 7:60-62. The '184 Patent further improves sign bit hiding by applying, for example, sign hiding to sets of coefficients for a transform unit. In this way the transform unit "may be divided or partitioned into sets of non-zero coefficients and a sign bit may be hidden for each set of non-zero coefficients using the parity of the sum

of non-zero coefficients in that set." *Id.* at 8:29-32. This compounds the benefits of sign bit hiding by applying the technique to two or more sets of coefficients.

### C. *U.S. Patent No. 12,186,395 ("the '395 Patent")*

124.　The '395 Patent, entitled "Multiple sign bit hiding within a transform unit," issued on January 7, 2025, to inventors Jing Wang, Xiang Yu, and Dake He. The '395 Patent issued from U.S. Patent Application No. 18/201,171, filed on May 23, 2023. The '395 Patent is a continuation of U.S. Patent Application No. 16/989,674, filed on August 10, 2020 (now U.S. Patent No. 11,786,596), which is a continuation of U.S. Patent Application No. 15/894,085, filed on February 12, 2018 (now U.S. Patent No. 10,743,028), which is a continuation of U.S. Patent Application No. 14/682,462, filed on April 9, 2015 (now U.S. Patent No. 9,900,622), which is a continuation of U.S. Patent Application No. 13/354,465, filed on January 20, 2012 (now U.S. Patent No. 9,008,184). The '395 Patent expires on January 20, 2032. A true and correct copy of the '395 Patent is attached as Exhibit 6.

125.　The '395 Patent is not directed to an abstract idea or any patent-ineligible concept. Instead, as explained below, the '395 Patent is directed to novel and unconventional improvements to the process of video coding. The '395 provides improvements over prior video coding techniques that result in substantial benefits to video compression, video quality, and video playback, for example by improving the efficiency of the video coding process. These substantial benefits are enjoyed by Disney's subscribers when, for example, watching videos on Disney's platforms.

126.　The specification of the '395 Patent claims priority to the '184 Patent and its specification substantially overlaps with that of the '184 Patent. The '395 Patent also relates to "methods and encoders/decoders for encoding and decoding residual video data using sign bit hiding." Ex. 6 at 2:45-47. The '395 Patent similarly relates to the benefits of applying sign hiding to sets of coefficients for transform unit. *Id.* at 8:55-61. The '395 Patent further improves upon sign bit hiding, for example, by only using sign bit hiding for a given subset of coefficients when that subset has more

COMPLAINT

than a threshold number of coefficients between a first non-zero coefficient and a last non-zero coefficient. *Id.* at 9:18-25. As an example, for each set of coefficients "the number of coefficients between the first and last non-zero coefficient (or the number of non-zero coefficients, or the cumulative total value of those coefficients) is tested against the threshold to determine whether to hide a sign bit for that set." *Id.* at 9:42-46. In this way, the '395 Patent allows for greater efficiency and flexibility by only using sign bit hiding in cases that will lead to significant benefits.

### D. U.S. Patent No. 8,964,849 ("the '849 Patent")

127.    Velos owns by assignment the entire right, title, and interest and to the '849 Patent, entitled "Multi-level significance maps for encoding and decoding," issued on February 24, 2015, to inventors Nguyen Nguyen, Tianying Ji, and Dake He. The '849 Patent issued from U.S. Patent Application No. 13/286,336, filed on November 1, 2011. The '849 Patent expires on September 20, 2032. A true and correct copy of the '849 Patent is attached as Exhibit 8.

128.    The '849 Patent is not directed to an abstract idea or any patent-ineligible concept. Instead, as explained below, the '849 Patent is directed to novel and unconventional improvements to the decoding of transform coefficient data in the field of digital video coding. The '849 Patent provides improvements over prior techniques that result in substantial benefits to motion prediction, video compression, video quality, and video playback. These substantial benefits are enjoyed by Disney's subscribers when, for example, watching videos on Disney's platforms.

129.    Between 30% and 80% of encoded data in video bitstream is used to encode quantized transform coefficients. *See* Ex. 8 at 1:65-67. "In many cases, the data being transformed is not the actual pixel data, but is residual data following a prediction operation." *Id.* at 1:42-44. In these cases, the quantized transform coefficients are used to represent residual data that can be combined with intra or inter predictions to arrive reconstructed video data from display. *See id.* at 7:2-47.

MᴄKᴏᴏʟ Sᴍɪᴛʜ, P.C.
Lᴏs Aɴɢᴇʟᴇs, CA

130. Transform coefficients are organized into blocks and broken down into several pieces for encoding, including a last significant coefficient position indicating the location of the last non-zero coefficient in the block, a significance map indicating the positions of non-zero transform coefficients in the block, and the magnitudes and signs of the coefficients. Ex. 8 at 1:56-65. The significance map is coded by significant coefficient flags reconstructed from the bitstream, which are typically coded using significant_coeff_flag syntax elements included in the bitstream. *Id.* at Abstract. The '849 Patent reduces the signaling of significance maps by allowing, for example, significance flags to be inferred by a decoder rather than signaled or received under certain circumstances. *Id.* at 18:11-19:24. As a result, the '849 Patent enables decoding of high quality video using less data.

### E. U.S. Patent No. 12,088,843 ("the '843 Patent")

131. The '843 Patent, entitled "Method for deriving a motion vector," issued on September 10, 2024, to inventor Christopher A. Segall. The '843 Patent issued from U.S. Patent Application 18/371,014, filed on September 21, 2023. The '843 Patent is a continuation of U.S. Patent Application No. 17/825,947, filed on May 26, 2022 (now U.S. Patent No. 11,800,150), which is a continuation of U.S. Patent Application No. 17/013,779, filed on September 7, 2020 (now U.S. Patent No. 11,350,129), which is a continuation of U.S. Patent Application No. 16/544,858, filed on August 19, 2019 (now U.S. Patent No. 10,771,816), which is a continuation of U.S. Patent Application No. 15/650,565, filed on July 14, 2017 (now U.S. Patent No. 10,397,613), which is a continuation of U.S. Patent Application No. 13/101,451, filed on May 5, 2011 (now U.S. Patent No. 9,749,657), which claims priority to U.S. Provisional Application No. 61/435,243, filed on January 21, 2011. The '843 Patent expires on May 5, 2031. A true and correct copy of the '843 Patent is attached as Exhibit 10.

132. The '843 Patent is not directed to merely an abstract idea or any patent-ineligible concept. Instead, as explained below, the '843 Patent is directed to novel

McKool Smith, P.C.
Los Angeles, CA

29

and unconventional improvements to motion-compensated prediction in the field of digital video coding. The '843 Patent provides improvements over prior motion compensated prediction and video compression techniques that result in substantial benefits to motion prediction, video compression, video quality, and video playback. These substantial benefits are enjoyed by Disney's subscribers when, for example, watching videos on Disney's platforms.

133.     The '843 Patent "relates to image decoding using buffer compression for motion vector competition." Ex. 10 at 1:22-23. In video coding, "[i]nter-picture prediction is performed from region(s) of already decoded pictures stored in the reference picture buffer." *Id.* at 2:8-10. When performing inter-picture prediction, a "reference area is selected by specifying a motion vector displacement and a reference picture index which may generically be referred to [] as a motion vector." *Id.* at 2:14-17. One issue in motion vector prediction is efficiently determining a list of motion vectors, as including too many candidate motion vectors results in increased memory requirements while having too few candidates leads to unreliable predictions. *Id.* at 3:36-38. The '843 Patent addresses this problem through techniques where candidate motion vectors are determined based on the candidate motion vectors of a co-located block. *Id.* at 4:15-20. The '843 Patent's techniques help to reduce complexity and storage requirement by, for example, relying on previous lists of candidate motion vectors, while still maintaining reliability of the candidates by using motion vector candidates from a co-located block. *Id.* at 4:60-67.

### F. U.S. Patent No. 12,341,962 ("the '962 Patent")

134.     Velos owns by assignment the entire right, title, and interest in and to the '962 Patent, entitled "Multi-level significance maps for encoding and decoding," issued on June 24, 2025, to inventors Nguyen Nguyen, Tianying Ji, and Dake He. The '962 Patent issued from U.S. Patent Application No. 17/888,377, filed on August 15, 2022, which is a continuation of U.S. Patent Application No 17/164,766, filed on February 1, 2021, which is a continuation of U.S. Patent Application No. 16/865,272,

McKool Smith, P.C.
Los Angeles, CA

30

filed on May 1, 2020 (now U.S. Patent No. 10,911,758), which is a continuation of U.S. Patent Application No. 16/266,870, filed on December 20, 2018 (now U.S. Patent No. 10,659,782), which is a continuation of U.S. Patent Application No. 15/884,535, filed on January 31, 2018 (now U.S. Patent No. 10,205,945), which is a continuation of U.S. Patent Application No. 14/621,552, filed on February 13, 2015 (now U.S. Patent No. 9,900,597), which is a continuation of U.S. Patent Application No. 13/286,336, filed on November 1, 2011 (now U.S. Patent No. 8,964,849). A true and correct copy of the '962 Patent is attached as Exhibit 12.

135.    The '962 Patent is not directed to merely an abstract idea or any patent-ineligible concept. Instead, the '962 Patent is directed to novel and unconventional improvements to the encoding of transform coefficients comprising residual information to, for example, enhance motion compensated predictions in the field of digital video coding. The '962 Patent provides improvements over prior video compression techniques that result in substantial benefits to motion prediction, video compression, video quality, and video playback. These substantial benefits are enjoyed by Disney's subscribers when, for example, watching videos on Disney's platforms.

136.    The specification of the '962 Patent claims priority to the '849 Patent and its specification substantially overlaps with that of the '849 Patent described above. The '962 Patent improves video encoding by more efficiently representing transform coefficient information. For example, the '962 Patent provides better ways of encoding the values of significant-coefficient flags within groups of significant-coefficient flags corresponding to blocks comprising transform units. The '962 Patent describes ways in which an encoder is able to reduce the amount of data necessary to signal transform information (which can be used as residual data with which to reconstruct pictures from predictions such as motion compensated predictions). For example, the '962 Patent describes how an encoder may use indirect signaling to convey either a "group flag" corresponding to a group of significant-coefficient flags

or, in some cases, particular significant-coefficient flags corresponding to a transform coefficient. By reducing the amount of data needed to send transform information, which is necessary for high-quality reconstructed video data, the '962 Patent, for example, enables higher quality video to be sent using less bandwidth than before.

## COUNT 1: INFRINGEMENT OF U.S. PATENT NO. 11,627,338

137. Velos incorporates by reference the preceding paragraphs as though fully set forth herein.

138. Disney has had knowledge and notice of the '338 Patent and its infringement thereof since at least as of Velos' December 17, 2025 email.

139. Disney infringes the '338 Patent by making, using, selling, offering for sale, and/or importing into the United States products, apparatuses, and/or methods covered by one or more claims of the '338 Patent. For example, Disney makes and uses decoders and encoders used in transcoding of uploaded videos and encoding of videos. Disney also uses decoders when it performs playback testing of its video content. Additionally, Disney distributes, sells, offers for sale, and/or imports the decoders and encoders included, on information and belief, in the Disney applications.

140. Disney makes, uses, sells, offers for sale, and/or imports the Accused Instrumentalities in this District and elsewhere in the United States, and thus directly infringes the '338 Patent literally and/or under the Doctrine of Equivalents, in violation of 35 U.S.C. § 271.

141. Disney also indirectly infringes the '338 Patent by way of induced infringement, literally, or under the Doctrine of Equivalents, in violation of 35 U.S.C. § 271(b), by inducing infringement by others, such as Disney's subscribers and end-users, in this District and elsewhere in the United States. Disney's subscribers and end-users directly infringe through their use of the inventions claimed in the '338 Patent when using the encoders or decoders included in the Disney applications. Disney induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Disney applications, and

McKool Smith, P.C.
Los Angeles, CA

providing instructions, encouragement, documentation, and other information to subscribers and end-users suggesting they use the Disney applications in an infringing manner. As a result of Disney's inducement, Disney's subscribers and end-users use the Disney applications in the way Disney intends and directly infringe the '338 Patent. Disney has performed and continues to perform these affirmative acts with knowledge of the '338 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '338 Patent.

142.    For example, Disney encourages (potential) subscribers to "Save on Disney+ and Hulu!", "Get the Disney+, Hulu, ESPN Unlimited Bundle," and "Get the Disney+, Hulu, HBO Max Bundle."[38] Disney encourages and instructs users and subscribers of the Disney applications to playback video using the applications, which results in the infringement of the '338 Patent.





143.    Disney further encourages and instructs subscribers to use the Disney applications to playback live video through the "Streams" feature on Disney+.[39]

---

[38] https://www.disneyplus.com/
[39] https://www.disneyplus.com/

COMPLAINT

**What are Streams on Disney+?**                                        —

Streams is a new feature that carefully curates content from within the Disney+ app or provides access to live linear streams, such as ABC News, to give you a continuous streaming experience. This feature is available for all Disney+ and bundle subscribers. Learn more about what content you can watch with **Streams** at the Disney+ Help Center.

144.    Upon information and belief, Disney derives revenue, directly and indirectly, from the activities relating to the Accused Instrumentalities, including their importation, testing, manufacture, use, sale, and offer for sale.

145.    Disney's infringement of the '338 Patent has damages and will continue to damage Velos.

146.    A claim chart that applies claim 1 of the '338 Patent to the Accused Products is attached as Exhibit 3.

## COUNT 2: INFRINGEMENT OF U.S. PATENT NO. 9,008,184

147.    Velos incorporates by reference the preceding paragraphs as though fully set forth herein.

148.    Disney has had knowledge and notice of the '184 Patent and its infringement thereof since at least as of Velos' December 17, 2025 email.

149.    Disney infringes the '184 Patent by making, using, selling, offering for sale, and/or importing into the United States products, apparatuses, and/or methods covered by one or more claims of the '184 Patent. For example, Disney makes and uses decoders and encoders used in transcoding of uploaded videos and encoding of videos. Disney also uses decoders when it performs playback testing of its video content. Additionally, Disney distributes, sells, offers for sale, and/or imports the decoders and encoders included, on information and belief, in the Disney applications.

150.    Disney makes, uses, sells, offers for sale, and/or imports the Accused Instrumentalities in this District and elsewhere in the United States, and thus directly infringes the '184 Patent literally and/or under the Doctrine of Equivalents, in violation of 35 U.S.C. § 271.

151.    Disney also indirectly infringes the '184 Patent by way of induced infringement, literally, or under the Doctrine of Equivalents, in violation of 35 U.S.C.

34

COMPLAINT

§ 271(b), by inducing infringement by others, such as Disney's subscribers and end-users, in this District and elsewhere in the United States. Disney's subscribers and end-users directly infringe through their use of the inventions claimed in the '184 Patent when using the encoders or decoders included in the Disney applications. Disney induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Disney applications, and providing instructions, encouragement, documentation, and other information to subscribers and end-users suggesting they use the Disney applications in an infringing manner. As a result of Disney's inducement, Disney's subscribers and end-users use the Disney applications in the way Disney intends and directly infringe the '184 Patent. Disney has performed and continues to perform these affirmative acts with knowledge of the '184 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '184 Patent.

152.    For example, Disney encourages (potential) subscribers to "Save on Disney+ and Hulu!", "Get the Disney+, Hulu, ESPN Unlimited Bundle," and "Get the Disney+, Hulu, HBO Max Bundle."[40] Disney encourages and instructs users and subscribers of the Disney applications to playback video using the applications, which results in the infringement of the '184 Patent.

[40] https://www.disneyplus.com/

COMPLAINT





153. Disney further encourages and instructs subscribers to use the Disney applications to playback live video through the "Streams" feature on Disney+.[41]



154. Upon information and belief, Disney derives revenue, directly and indirectly, from the activities relating to the Accused Instrumentalities, including their importation, testing, manufacture, use, sale, and offer for sale.

155. Disney's infringement of the '184 Patent has damages and will continue to damage Velos.

156. A claim chart that applies claim 1 of the '184 Patent to the Accused Products is attached as Exhibit 5.

## COUNT 3: INFRINGEMENT OF U.S. PATENT NO. 12,186,395

157. Velos incorporates by reference the preceding paragraphs as though fully set forth herein.

---

[41] https://www.disneyplus.com/

McKool Smith, P.C.
Los Angeles, CA

158.     Disney has had knowledge and notice of the '395 Patent and its infringement thereof since at least as of Velos' December 17, 2025 email.

159.     Disney infringes the '395 Patent by making, using, selling, offering for sale, and/or importing into the United States products, apparatuses, and/or methods covered by one or more claims of the '395 Patent. For example, Disney makes and uses decoders and encoders used in transcoding of uploaded videos and encoding of videos. Disney also uses decoders when it performs playback testing of its video content. Additionally, Disney distributes, sells, offers for sale, and/or imports the decoders and encoders included, on information and belief, in the Disney applications.

160.     Disney makes, uses, sells, offers for sale, and/or imports the Accused Instrumentalities in this District and elsewhere in the United States, and thus directly infringes the '395 Patent literally and/or under the Doctrine of Equivalents, in violation of 35 U.S.C. § 271.

161.     Disney also indirectly infringes the '395 Patent by way of induced infringement, literally, or under the Doctrine of Equivalents, in violation of 35 U.S.C. § 271(b), by inducing infringement by others, such as Disney's subscribers and end-users, in this District and elsewhere in the United States. Disney's subscribers and end-users directly infringe through their use of the inventions claimed in the '395 Patent when using the encoders or decoders included in the Disney applications. Disney induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Disney applications, and providing instructions, encouragement, documentation, and other information to subscribers and end-users suggesting they use the Disney applications in an infringing manner. As a result of Disney's inducement, Disney's subscribers and end-users use the Disney applications in the way Disney intends and directly infringe the '395 Patent. Disney has performed and continues to perform these affirmative acts with knowledge of the '395 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '395 Patent.

McKool Smith, P.C.
Los Angeles, CA

37

COMPLAINT

162. For example, Disney encourages (potential) subscribers to "Save on Disney+ and Hulu!", "Get the Disney+, Hulu, ESPN Unlimited Bundle," and "Get the Disney+, Hulu, HBO Max Bundle."[42] Disney encourages and instructs users and subscribers of the Disney applications to playback video using the applications, which results in the infringement of the '395 Patent.



163. Disney further encourages and instructs subscribers to use the Disney applications to playback live video through the "Streams" feature on Disney+.[43]



164. Upon information and belief, Disney derives revenue, directly and indirectly, from the activities relating to the Accused Instrumentalities, including their importation, testing, manufacture, use, sale, and offer for sale.

---

[42] https://www.disneyplus.com/
[43] https://www.disneyplus.com/

COMPLAINT

165.    Disney's infringement of the '395 Patent has damages and will continue to damage Velos.

166.    A claim chart that applies claim 1 of the '395 Patent to the Accused Products is attached as Exhibit 7.

## COUNT 4: INFRINGEMENT OF U.S. PATENT NO. 8,964,849

167.    Velos incorporates by reference the preceding paragraphs as though fully set forth herein.

168.    Disney has had knowledge and notice of the '849 Patent and its infringement thereof since at least as of Velos' December 17, 2025 email.

169.    Disney infringes the '849 Patent by making, using, selling, offering for sale, and/or importing into the United States products, apparatuses, and/or methods covered by one or more claims of the '849 Patent. For example, Disney makes and uses decoders and encoders used in transcoding of uploaded videos and encoding of videos. Disney also uses decoders when it performs playback testing of its video content. Additionally, Disney distributes, sells, offers for sale, and/or imports the decoders and encoders included, on information and belief, in the Disney applications.

170.    Disney makes, uses, sells, offers for sale, and/or imports the Accused Instrumentalities in this District and elsewhere in the United States, and thus directly infringes the '849 Patent literally and/or under the Doctrine of Equivalents, in violation of 35 U.S.C. § 271.

171.    Disney also indirectly infringes the '849 Patent by way of induced infringement, literally, or under the Doctrine of Equivalents, in violation of 35 U.S.C. § 271(b), by inducing infringement by others, such as Disney's subscribers and end-users, in this District and elsewhere in the United States. Disney's subscribers and end-users directly infringe through their use of the inventions claimed in the '849 Patent when using the encoders or decoders included in the Disney applications. Disney induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Disney applications, and

McKOOL SMITH, P.C.
LOS ANGELES, CA

providing instructions, encouragement, documentation, and other information to subscribers and end-users suggesting they use the Disney applications in an infringing manner. As a result of Disney's inducement, Disney's subscribers and end-users use the Disney applications in the way Disney intends and directly infringe the '849 Patent. Disney has performed and continues to perform these affirmative acts with knowledge of the '849 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '849 Patent.

172.    For example, Disney encourages (potential) subscribers to "Save on Disney+ and Hulu!", "Get the Disney+, Hulu, ESPN Unlimited Bundle," and "Get the Disney+, Hulu, HBO Max Bundle."[44] Disney encourages and instructs users and subscribers of the Disney applications to playback video using the applications, which results in the infringement of the '849 Patent.



173.    Disney further encourages and instructs subscribers to use the Disney applications to playback live video through the "Streams" feature on Disney+.[45]

[44] https://www.disneyplus.com/
[45] https://www.disneyplus.com/

40

COMPLAINT

**What are Streams on Disney+?** —

Streams is a new feature that carefully curates content from within the Disney+ app or provides access to live linear streams, such as ABC News, to give you a continuous streaming experience. This feature is available for all Disney+ and bundle subscribers. Learn more about what content you can watch with **Streams** at the Disney+ Help Center.

174. Upon information and belief, Disney derives revenue, directly and indirectly, from the activities relating to the Accused Instrumentalities, including their importation, testing, manufacture, use, sale, and offer for sale.

175. Disney's infringement of the '849 Patent has damages and will continue to damage Velos.

176. A claim chart that applies claim 1 of the '849 Patent to the Accused Products is attached as Exhibit 9.

## COUNT 5: INFRINGEMENT OF U.S. PATENT 12,088,843

177. Velos incorporates by reference the preceding paragraphs as though fully set forth herein.

178. Disney has had knowledge and notice of the '843 Patent and its infringement thereof since at least as of Velos' December 17, 2025 email.

179. Disney infringes the '843 Patent by making, using, selling, offering for sale, and/or importing into the United States products, apparatuses, and/or methods covered by one or more claims of the '843 Patent. For example, Disney makes and uses decoders and encoders used in transcoding of uploaded videos and encoding of videos. Disney also uses decoders when it performs playback testing of its video content. Additionally, Disney distributes, sells, offers for sale, and/or imports the decoders and encoders included, on information and belief, in the Disney applications.

180. Disney makes, uses, sells, offers for sale, and/or imports the Accused Instrumentalities in this District and elsewhere in the United States, and thus directly infringes the '843 Patent literally and/or under the Doctrine of Equivalents, in violation of 35 U.S.C. § 271.

181. Disney also indirectly infringes the '843 Patent by way of induced infringement, literally, or under the Doctrine of Equivalents, in violation of 35 U.S.C.

41

COMPLAINT

§ 271(b), by inducing infringement by others, such as Disney's subscribers and end-users, in this District and elsewhere in the United States. Disney's subscribers and end-users directly infringe through their use of the inventions claimed in the '843 Patent when using the encoders or decoders included in the Disney applications. Disney induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Disney applications, and providing instructions, encouragement, documentation, and other information to subscribers and end-users suggesting they use the Disney applications in an infringing manner. As a result of Disney's inducement, Disney's subscribers and end-users use the Disney applications in the way Disney intends and directly infringe the '843 Patent. Disney has performed and continues to perform these affirmative acts with knowledge of the '843 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '843 Patent.

182.    For example, Disney encourages (potential) subscribers to "Save on Disney+ and Hulu!", "Get the Disney+, Hulu, ESPN Unlimited Bundle," and "Get the Disney+, Hulu, HBO Max Bundle."[46] Disney encourages and instructs users and subscribers of the Disney applications to playback video using the applications, which results in the infringement of the '843 Patent.

---

[46] https://www.disneyplus.com/

COMPLAINT



183. Disney further encourages and instructs subscribers to use the Disney applications to playback live video through the "Streams" feature on Disney+.[47]



184. Upon information and belief, Disney derives revenue, directly and indirectly, from the activities relating to the Accused Instrumentalities, including their importation, testing, manufacture, use, sale, and offer for sale.

185. Disney's infringement of the '843 Patent has damages and will continue to damage Velos.

186. A claim chart that applies claim 1 of the '843 Patent to the Accused Products is attached as Exhibit 11.

## COUNT 6: INFRINGEMENT OF U.S. PATENT NO. 12,341,962

187. Velos incorporates by reference the preceding paragraphs as though fully set forth herein.

---

[47] https://www.disneyplus.com/

COMPLAINT

McKool Smith, P.C.
Los Angeles, CA

188.   Disney has had knowledge and notice of the '962 Patent and its infringement thereof since at least as of Velos' December 17, 2025 email.

189.   Disney infringes the '962 Patent by making, using, selling, offering for sale, and/or importing into the United States products, apparatuses, and/or methods covered by one or more claims of the '962 Patent. For example, Disney makes and uses decoders and encoders used in transcoding of uploaded videos and encoding of videos. Disney also uses decoders when it performs playback testing of its video content. Additionally, Disney distributes, sells, offers for sale, and/or imports the decoders and encoders included, on information and belief, in the Disney applications.

190.   Disney makes, uses, sells, offers for sale, and/or imports the Accused Instrumentalities in this District and elsewhere in the United States, and thus directly infringes the '962 Patent literally and/or under the Doctrine of Equivalents, in violation of 35 U.S.C. § 271.

191.   Disney also indirectly infringes the '962 Patent by way of induced infringement, literally, or under the Doctrine of Equivalents, in violation of 35 U.S.C. § 271(b), by inducing infringement by others, such as Disney's subscribers and end-users, in this District and elsewhere in the United States. Disney's subscribers and end-users directly infringe through their use of the inventions claimed in the '962 Patent when using the encoders or decoders included in the Disney applications. Disney induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Disney applications, and providing instructions, encouragement, documentation, and other information to subscribers and end-users suggesting they use the Disney applications in an infringing manner. As a result of Disney's inducement, Disney's subscribers and end-users use the Disney applications in the way Disney intends and directly infringe the '962 Patent. Disney has performed and continues to perform these affirmative acts with knowledge of the '962 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '962 Patent.

COMPLAINT

192.    For example, Disney encourages (potential) subscribers to "Save on Disney+ and Hulu!", "Get the Disney+, Hulu, ESPN Unlimited Bundle," and "Get the Disney+, Hulu, HBO Max Bundle."[48] Disney encourages and instructs users and subscribers of the Disney applications to playback video using the applications, which results in the infringement of the '962 Patent.



193.    Disney further encourages and instructs subscribers to use the Disney applications to playback live video through the "Streams" feature on Disney+.[49]



194.    Upon information and belief, Disney derives revenue, directly and indirectly, from the activities relating to the Accused Instrumentalities, including their importation, testing, manufacture, use, sale, and offer for sale.

McKool Smith, P.C.
Los Angeles, CA

[48] https://www.disneyplus.com/
[49] https://www.disneyplus.com/

45

195.    Disney's infringement of the '962 Patent has damages and will continue to damage Velos.

196.    A claim chart that applies claim 1 of the '962 Patent to the Accused Products is attached as Exhibit 13.

## COUNT 7: DECLARATORY JUDGMENT THAT VELOS HAS NEGOTIATED IN GOOD FAITH WITH DISNEY AND COMPLIED WITH ANY OBLIGATIONS UNDER THE ITU IPR POLICY

197.    Velos incorporates by reference the preceding paragraphs as though fully set forth herein.

198.    Disney designs, manufactures, uses, and markets products that utilize and comply with one or more technical standards, such as the ITU H.265 Standard. Disney requires a license to one or more of Velos' essential patent claims.

199.    Velos has voluntarily declared to ITU that it is prepared to grant licenses to its essential H.265 patent claims on a worldwide, non-discriminatory basis and on reasonable terms and conditions.

200.    Velos has at all times been prepared and willing to grant a license to Disney under its essential patent claims on reasonable and non-discriminatory terms.

201.    Velos negotiated in good faith with Disney.

202.    Velos attempted to engage in substantive licensing negotiations both directly with Disney and through Avanci Video.

203.    Velos has negotiated with Disney since June 2023 without any meaningful progress.

204.    Disney has provided no indication that it is willing to license Velos' essential patent claims on RAND terms.

205.    On information and belief, Disney received an offer to take a license that would cover the Velos' video coding patents, including the Asserted Patents, on RAND terms and conditions.

McKool Smith, P.C.
Los Angeles, CA

46

COMPLAINT

206.    Disney remains unlicensed to Velos' patents.

207.    A dispute exists between Velos and Disney concerning whether Velos has negotiated in good faith toward a license with Disney and complied with the ITU Common Patent Policy and Velos' relevant Patent Statement and Licensing Declarations, as well as applicable laws. There is a case or controversy of sufficient immediacy, reality, and ripeness to warrant the issuance of a declaratory judgment.

208.    Velos seeks a declaration that Velos has negotiated in good faith toward a license with Disney and has complied with its obligations under the ITU Common Patent Policy and commitments under Velos' relevant Patent Statement and Licensing Declarations.

## COUNT 8: BREACH OF DISNEY'S OBLIGATION TO NEGOTIATE IN GOOD FAITH TOWARD A LICENSE WITH VELOS

209.    Velos incorporated by reference the preceding paragraphs as though fully set forth herein.

210.    Disney is obligated to negotiate in good faith with Velos toward concluding a license for Velos' patent claims essential to the H.265 Standard. Disney has failed to negotiate in good faith with Velos and therefore breached its obligation, for the reasons provided in Count 7 above. Disney's conduct was unreasonable and did not reflect a sincere interest in timely concluding a license.

211.    Velos has at all times been prepared and willing to grant a license to Disney under its essential patent claims.

212.    Velos negotiated in good faith with Disney.

213.    Disney failed to negotiate in good faith, choosing instead to obstruct negotiations and avoid paying a RAND royalty.

214.    There is a dispute between Velos and Disney concerning whether Disney complied with its obligation to negotiate in good faith toward concluding a license to the essential claims of the Asserted Patents. This controversy is of sufficient immediacy, reality, and ripeness to warrant the issuance of a declaratory judgment.

McKool Smith, P.C.
Los Angeles, CA

215.    Velos is entitled to a declaratory judgment that Disney has not complied with its obligation to act in good faith during its negotiations with Velos, in regard to RAND terms for a license to the parties' essential patent claims, and as a consequence, that Disney has repudiated and forfeited its ability to claim rights as a third-party beneficiary of Velos' RAND commitment to ITU to the extent applicable to the essential claims of Velos' patents.

216.    In addition to a declaration, Velos also requests an award of damages for the expense it has incurred because of Disney's failure to negotiate in good faith with Velos.

## ATTORNEYS' FEES

217.    Velos is entitled to recover reasonable and necessary attorneys' fees under applicable law.

## JURY DEMAND

218.    Velos hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

219.    WHEREFORE, Plaintiff Velos Media, LLC respectfully requests that this Court enter judgment in its favor as allows and afford Velos the following relief:

I.      Adjudge and declare that Disney infringes the Asserted Patents;

II.     Adjudge and declare that Disney's infringement of the Asserted Patents is willful;

III.    Award Velos its actual damages;

IV.     Award Velos enhanced damages pursuant to 35 U.S.C. § 284;

V.      Award Velos pre-judgment and post-judgment interest to the full extent allowed under the law, as well as its costs;

VI.     Adjudge and declare that this is an exceptional case and award Velos its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

VII.    Order an accounting of damages for acts of infringement;

48

McKOOL SMITH, P.C.
LOS ANGELES, CA

VIII.   Adjudge and declare that Velos has negotiated in good faith toward concluding a license with Disney and complied with any obligations it may have under the relevant standard development organization IPR policies and commitments under Velos' relevant standard development organization declarations, as well as applicable laws;

IX.   Adjudge and declare that Disney failed to negotiate in good faith toward concluding a license with Velos, and has thus lost or forfeited its right to claim third-party beneficiary status, including under Velos' relevant ITU Patent Statement and Licensing Declarations to the extent applicable to the essential claims of the Asserted Patents;

X.   Award Velos its costs of suit; and

XI.   Award such other equitable relief which may be requested and to which Velos is entitled.

COMPLAINT

Dated: March 20, 2026

Respectfully submitted,

*/s/ Alan P. Block*
Alan P. Block
ablock@mckoolsmith.com
**McKool Smith, P.C.**
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone: (213) 694-1200
Facsimile: (213) 694-1234

Warren H. Lipschitz*
wlipschitz@mckoolsmith.com
Erik Fountain*
efountain@mckoolsmith.com
Eric Hansen*
ehansen@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1200
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

R. Mitch Verboncoeur*
mverboncoeur@mckoolsmith.com
**MCKOOL SMITH, P.C.**
303 Colorado Street, Suite 3100
Austin, Texas 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744

Samuel F. Baxter*
sbaxter@mckoolsmith.com
Kevin Burgess*
kburgess@mckoolsmith.com
Jennifer Truelove*
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

McKool Smith, P.C.
Los Angeles, CA

50

*Pro Hac Vice Applications forthcoming.*

*Attorneys for Plaintiff*
*Velos Media, LLC*

McKool Smith, P.C.
Los Angeles, CA

51

COMPLAINT